UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMRA PLASTIC AND RECONSTRUCTIVE SURGERY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | Case No. 23–22706–ESK–MJS<br><br>OPINION |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on defendant UnitedHealthcare Insurance Company s/h/a United Healthcare Insurance Company's motion to dismiss. (ECF No. 9.) Plaintiff Samra Plastic and Reconstructive Surgery filed an opposition (ECF No. 15 (Pl.'s Opp'n Br.)) to which defendant replied (ECF No. 20 (Def.'s Reply Br.)). For the following reasons, defendant's motion will be GRANTED.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a company organized under New Jersey law and located in Monmouth County that provides healthcare services. (ECF No. 1–1 (Compl.) p.2.)[1] Defendant is a Connecticut corporation with its principal place of

---

[1] The notice of removal asserts that plaintiff is a limited liability company. (ECF No. 1 (Def.'s Removal Notice) pp.6, 7.) If this is so, plaintiff's state of organization and location are not relevant to its citizenship. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of each of its members.") Defendant asserts that plaintiff's members are citizens of New Jersey. (Def.'s Removal Notice pp.6, 7.) If plaintiff is indeed a limited liability company and accepts the Court's invitation to file an amended complaint, it shall appropriately plead its state of citizenship.

business in Connecticut. (Def.'s Removal Notice pp. 7, 8.)[2] "EP" is a patient who received insurance benefits through defendant. (Compl. p. 3.) Plaintiff purports to bring its own claims as well as claims related to the medical services provided to EP as an assignee. (*Id.*)

EP had a history of breast cancer and right breast radiation and underwent bilateral mastectomies with placement of prepectoral tissue expanders. (*Id.* p. 4.) EP had trouble healing and consulted with Dr. Fares Samra, who is board-certified plastic surgeon employed or contracted by plaintiff. (*Id.*) Dr. Samra recommended reconstructive surgery. (*Id.*)

Plaintiff was a non-participating or out-of-network provider. (*Id.* p. 3.) Prior to performing the surgery, plaintiff's office called defendant on March 10, 2021 to request preauthorization for the surgery—consistent with plaintiff's business practices. (*Id.* p. 4.) During the call, defendant's representative confirmed that Dr. Samra was authorized to perform seven Current Procedural Terminology (CPT) codes. (*Id.*) Defendant further agreed to pay 50 percent of the charges billed for the preauthorized codes. (*Id.* pp. 4, 5.)

Dr. Samra performed the preauthorized surgery on March 18, 2021 at Portsmouth Regional Hospital in New Hampshire. (*Id.*) Specifically, Dr. Samra performed bilateral removal of tissue expanders, bilateral DIEP flap breast reconstruction, bilateral capsulectomies of the breasts, and bilateral removal of partial ribs. (*Id.*) Plaintiff submitted a bill for $236,810 to defendant following the surgery, meaning that $118,405 was to be paid by defendant. (*Id.* p. 5.) The billed sum was usual and customary for a complex

---

[2] The complaint asserts that defendant is a corporation headquartered in Minnesota and with offices in Connecticut. (Compl. pp. 2, 3.) These allegations do not sufficiently plead defendant's citizenship. *See Zambelli Fireworks Mfg. Co., Inc.*, 592 F.3d at 419 ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.") The Court accepts defendant's own representation of its citizenship, though in any case the parties do not dispute that they are diverse in citizenship.

procedure performed by a board-certified plastic surgeon. (*Id.*) Defendant ultimately paid $20,000, leaving a balance of $98,405. (*Id.*)

Plaintiff filed suit in New Jersey Superior Court Law Division – Monmouth County on October 17, 2023. (*Id.* pp. 2–16.) It asserted seven counts. Counts 1 through 3 assert claims for breach of contract, promissory estoppel, and account stated premised on the preauthorization. (*Id.* pp. 6–8.) In the alternative, plaintiff brings Employee Retirement Income Security Act (ERISA) claims alleging failure to make all payments pursuant to EP's plan, breaches of fiduciary and co-fiduciary duties, failure to establish and maintain reasonable claims procedures, and failure to furnish a summary plan description. (*Id.* pp. 8–15.)[3]

Defendant removed the case to this District, asserting both federal-question jurisdiction and diversity of citizenship. (Def.'s Removal Notice pp. 3–8.) The pending motion practice followed. After the pending motion was briefed, this matter was reassigned to me. (ECF No. 21.)

---

[3] Count 4 alleges failure to make payments pursuant to 29 U.S.C. § 1132(a)(1)(B), but then "further alleges that Defendant[']s denial of payment on the CPT codes violates the Women's Health and Cancer Rights Act of 1998 … and applicable State law." (Compl. pp. 8, 9.) The Women's Health and Cancer Rights Act seeks "to ensure that women who underwent mastectomies would not be denied coverage for reconstructive surgery on the ground that it was cosmetic" but does not itself specify a required level of benefits. *Tamburrino v. United Healthcare Ins. Co.*, Case No. 21–12766, 2023 WL 416157, at *6 (D.N.J. Jan. 26, 2023) (quoting *Prestige Inst. for Plastic Surgery, P.C. v. Keystone Healthplan E.*, Case No. 20–00496, 2020 WL 7022668, at *9 (D.N.J. Nov. 30, 2020)). Plaintiff does not provide any specific allegations with respect to any violation or identify any "applicable State law." The act further does not come up in the party's briefing aside from a single reference at the end of plaintiff's opposition. (Pl.'s Opp'n Br. p. 20.) If plaintiff decides to file an amended complaint and allege violation of the Women's Health and Cancer Rights Act, it shall make specific allegations under a separate count in order to avoid potential improper shotgun pleading. *See Oaklyn Villas Urban Renewal LLC v. Borough of Oaklyn*, Case No. 22–03177, 2023 WL 2555467, at *4 (D.N.J. Mar. 17, 2023) ("A shotgun pleading can arise in … a complaint 'not separating into a different count each cause of action or claim for relief….'" (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015))).

## II. STANDARD AND PARTY ARGUMENTS

### A. <u>Motions to Dismiss</u>

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive dismissal under Federal Rule of Civil Procedure (Rule) 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### B. <u>Party Arguments</u>

Defendant first argues that Counts 1 through 3 are state-law claims that are preempted by ERISA. (ECF No. 9–10 (Def.'s Mot. Br.) pp. 9, 10.) EP's health benefit plan is an employee welfare plan governed by ERISA and satisfies necessary requirements, according to defendant. (*Id.* pp. 16–18.) Defendant asserts that Counts 1 through 3 relate to its administration of the ERISA-governed plan. (*Id.* p. 20.) The preauthorization process was established in the plan and did not set forth a legal duty separate from what is expressly required by the plan. (*Id.* pp. 20, 21.) The complaint does not support finding that there was a contract independent of the ERISA-governed

4

plan, according to defendant. (*Id.* pp. 21, 22.) The state-law claims are thus barred because they merely represent alternatives to ERISA's remedial scheme. (*Id.* pp. 22.) On the merits, defendant argues that Counts 1 through 3 must fail because they are premised on an alleged agreement or promise to pay 50 percent of billed charges that is contradicted by the call transcript and there is no allegation that plausibly suggests an agreement regarding any particular sum. (*Id.* pp. 10, 11, 23–29.)

The purported assignment of EP's ERISA claims to plaintiff was ineffectual, according to defendant, because the plan contains an anti-assignment clause and the complaint does not allege that defendant consented to the assignment as required. (*Id.* p. 31.) Defendant also contends that Counts 5 through 7 must fail for lack of standing because the alleged assignment pertained to plan benefits, not additional legal rights. (*Id.* pp. 32, 33.) Defendant adds that Counts 5 through 7 fail as a matter of law because Count 5 seeks relief identical to that of Count 4, there is no private right of action for alleged failure to establish claim procedures, and the failure to establish a summary plan description is improperly asserted against defendant because defendant is not the plan administrator. (*Id.* pp 33–35.)

Plaintiff counters that courts have found that state-law claims similar to those alleged here are not preempted by ERISA because "they are 'too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan.'" (Pl.'s Opp'n Br. p. 10 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21 (1983)).) Plaintiff cites *Plastic Surgery Center, P.A. v. Aetna Life Insurance Company*, 967 F.3d 218 (3d Cir. 2020) to support the proposition that an out-of-network provider may bring claims based on an insurer's oral representations of preauthorization and payment. (*Id.* pp. 11, 12.) In that same vein, the court in *Comprehensive Spine Care, P.A. v. Oxford Health Insurance, Inc.*, Case No. 18–10036, 2018 WL 6445593 (D.N.J. Dec. 10, 2018)

5

concluded that a contract could exist where the plaintiff billed normal and reasonable charges. (*Id.* pp. 12, 13.) Additionally, *Pascack Valley Hospital v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004) held that providers have an independent legal right to pursue claims against insurers for failure to pay preauthorized billed charges. (*Id.* p. 13.) Plaintiff asserts that it has otherwise pleaded viable state-law claims premised on defendant's preauthorization and agreement to pay 50 percent of the billed charges. (*Id.* pp. 14–17.)

Defendant's anti-assignment argument ignores the fact that EP has authorized plaintiff to sue on her behalf by way of a limited power of attorney/designated authorized representative form, plaintiff states. (*Id.* pp. 17, 18.) The arrangement is different than an assignment as the claims still belong to EP, but are being pleaded by plaintiff as her authorized representative—similar to if EP retained counsel herself. (*Id.* pp. 17–19.) The Third Circuit, in *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018), similarly permitted a provider to assert rights on behalf of a patient via a limited power of attorney. (*Id.* pp. 18, 19.) If the Court rejects its arguments, plaintiff lastly requests dismissal without prejudice with leave to amend. (*Id.* pp. 19, 20.)

### III. DISCUSSION

#### A. <u>Plaintiff's ERISA Claims (Counts 4–7)</u>

I begin with plaintiff's ERISA claims—Counts 4 through 7—pleaded in the alternative to its state-law claims. Plaintiff states in the complaint that it has standing to proceed with these causes of action due to an assignment obtained from EP. (Compl. pp. 3, 8.) Defendant responds that the plan contains an anti-assignment clause that prohibits assignment without defendant's consent and such consent has not been pleaded here. (Def.'s Mot. Br. p. 31.) I agree.

ERISA provides "a participant or beneficiary" with the opportunity to bring a civil action to recover benefits or enforce or clarify rights under the terms of a plan. 29 U.S.C. §1132(a)(1). Healthcare providers are not participants or beneficiaries. *Am. Orthopedic & Sports Med.*, 890 F.3d at 449–50. However, "a valid assignment of benefits by a plan participant or beneficiary transfers to such a provider both the insured's right to payment under a plan and his right to sue for that payment." *Id.* at 450. In turn, anti-assignment clauses in ERISA-governed plans are generally enforceable. *Id.* at 453.

Defendant includes with its motion a copy of the plan. (ECF No. 9–2 (Def.'s Ex.).) Generally, at the dismissal stage, a court may not consider material extraneous to the pleading unless it is "integral to or explicitly relied upon in the complaint." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 459 (D.N.J. 2020) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Such material includes exhibits attached to the complaint, matters of public record, and undisputedly authentic documents so long as the plaintiff's claims are based on the documents. *Id.* I find that I may consider the plan because it is integral and explicitly relied upon by plaintiff in asserting its ERISA claims. *See Prestige Inst. for Plastic Surgery, P.C. on behalf of S.A. v. Aetna Life Ins. Co.*, Case No. 20–10371, 2021 WL 1625117, at *2 (D.N.J. Apr. 27, 2021) ("[T]he Court may consider the Plan itself 'without converting the motion to dismiss into one for summary judgment' because the Plan is 'integral or explicitly relied upon' in the Complaint.'" (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

The plan states

> You may not assign your Benefits under the Plan or any cause of action related to your Benefits under the Plan to an out-of-network provider without UnitedHealthcare's

> consent. When you assign your Benefits under the Plan to an out-of-network provider with UnitedHealthcare's consent, and the out-of-network provider submits a claim for payment, you and the out-of-network provider represent and warrant that the Covered Health Services were actually provided and were medically appropriate.
>
> When UnitedHealthcare has not consented to an assignment, UnitedHealthcare will send the reimbursement directly to you (the Employee) for you to reimburse the out-of-network provider upon receipt of their bill. However, UnitedHealthcare reserves the right, in its discretion, to pay the out-of-network provider directly for services rendered to you. When exercising its discretion with respect to payment, UnitedHealthcare may consider whether you have requested that payment of your Benefits be made directly to the out-of-network provider. Under no circumstances will UnitedHealthcare pay Benefits to anyone other than you or, in its discretion, your provider. Direct payment to a out-of-network provider shall not be deemed to constitute consent by UnitedHealthcare to an assignment or to waive the consent requirement. When UnitedHealthcare in its discretion directs payment to a out-of-network provider, you remain the sole beneficiary of the payment, and the out-of-network provider does not thereby become a beneficiary. Accordingly, legally required notices concerning your Benefits will be directed to you, although UnitedHealthcare may in its discretion send information concerning the Benefits to the out-of-network provider as well. If payment to an out-of-network provider is made, the Plan reserves the right to offset Benefits to be paid to the provider by any amounts that the provider owes the Plan (including amounts owed as a result of the assignment of other plans' overpayment recovery rights to the Plan), pursuant to Refund of Overpayments in "Coordination of Benefits."

(Def.'s Ex. p. 58.)

Plaintiff appears to acknowledge the anti-assignment clause and does not dispute its validity. (Pl.'s Opp'n Br. pp. 17, 18.) Therefore, I am left to agree

8

with defendant that the anti-assignment clause deprives plaintiff of standing to pursue its ERISA claims. *See BrainBuilders, LLC v. Aetna Life Ins. Co.*, Case No. 17–03626, 2024 WL 358152, at *6–7 (D.N.J. Jan. 31, 2024).[4]

Faced with the prospect of its ERISA claims being dismissed for lack of standing, plaintiff pulls a rabbit out of its hat. It claims that defendant's anti-assignment argument "ignores the fact that Patient has authorized Plaintiff to file suit on behalf of the Patient/Member and, if necessary, in the Patient's own name, by way of the DAR Form/Limited Power of Attorney," which is distinguishable from an assignment of benefits. (Pl.'s Opp'n Br. pp. 17, 18.) If such facts were ignored, it is because they were not included in the complaint. As plaintiff knows, it may not premise standing in its complaint on an assignment of benefits only to later premise standing on a power of attorney in its opposition to dismissal. *See Samra Plastic and Reconstructive Surgery v. Cigna Health and Life Ins. Co.*, Case No. 23–22521, 2024 WL 3444273, at *3 (D.N.J. July 17, 2024).

Putting this deficiency out of sight but not out of mind, I turn to the purported designation of plaintiff as EP's authorized representative. Plaintiff includes with its opposition an image of a document purportedly signed by EP. (ECF No. 15–2 (Pl.'s Ex.).)[5] The document, dated June 28, 2021, appoints each of EP's providers and their respective assistant surgeons, physician assistants, teaching assistants, billing staff, lawyers, and business associates as her

---

[4] I refer to plaintiff's standing as grounds for dismissal. Generally, a motion to dismiss for lack of standing is brought pursuant to Rule 12(b)(1) and not Rule 12(b)(6) as defendant has done here "because standing is a jurisdictional matter." *See Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). However, as here, where a plaintiff seeks to assert derivative standing to sue under ERISA, the motion to dismiss is appropriately filed pursuant to Rule 12(b)(6). *See N.J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n. 3 (3d Cir. 2015). In any case, "a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)." *Id.*

[5] The patient's name and signature are redacted in the exhibit. (Pl.'s Ex.)

designated authorized representatives with the same rights as EP. (*Id.*) These rights include the right to file claims for benefits and directly receive payments; file appeals for payment of benefits; and pursue any rights, claims, or causes of action through demands, arbitration, litigation, and other means. (*Id.*)

The anti-assignment clause discussed above does not itself foreclose the possibility that EP may grant a valid power of attorney. *See Am. Orthopedic & Sports Med.*, 890 F.3d at 455. The operative term here is "valid." "A power of attorney must be in writing, duly signed and acknowledged in the manner set forth in [N.J. Stat. Ann. §] 46:14–2.1." N.J. Stat. Ann. § 46:2B–8.9; *Kayal v. Cigna Health and Life Ins. Co.*, Case No. 23–03808, 2024 WL 2954283, at *3 (D.N.J. June 12, 2024). N.J. Stat. Ann. § 46:14–2.1 in turn requires the maker and a witness to "appear before an officer specified in [N.J. Stat. Ann. §] 46:14–6.1 or use communication technology to appear before the officer" and, respectively, "acknowledge that it was executed as the maker's own act" and "swear that he or she witnessed the maker of the instrument execute the instrument as the maker's own act." N.J. Stat. Ann. § 46:14–2.1(a)–(b); *Kayal*, 2024 WL 2954283, at *3. Specified officers are attorneys-at-law, notaries public, county clerks or deputy county clerks, registers of deeds and mortgages or deputy registers, and surrogates or deputy surrogates. N.J. Stat. Ann. § 46:14–6.1(a). An officer taking an acknowledgement or proof must sign a certificate stating the acknowledgement or proof. N.J. Stat. Ann. § 46:14–2.1(c). The certificate must also state that the maker or witness personally appeared before the officer, that the officer was satisfied that the maker or witness was in fact the maker or witness, the jurisdiction in which the acknowledgement or proof was taken, the officer's name and title, and the date the acknowledgement was taken. *Id.*

The document attached to plaintiff's opposition does not include any of these necessary formalities and, instead, merely leaves space at the bottom for the date and the patient's name and signature. These deficiencies lead me to conclude that plaintiff lacks standings to bring claims on EP's behalf. *See Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Case No. 21–09056, 2022 WL 3500416, at *5 (D.N.J. Aug. 18, 2022) (finding that the sample power-of-attorney form and related allegations did not adhere to necessary formalities and the plaintiff therefore lacked standing to bring claims on behalf of his patients). Counts 4 through 7 will therefore be dismissed without prejudice to plaintiff's filing of an amended complaint.[6]

### B. Plaintiff's State-Law Claims (Counts 1–3)

Defendant asserts that plaintiff's state-law claims are preempted by ERISA and therefore must be dismissed. There are two types of ERISA preemption, express under Section 514 and complete pursuant to Section 502. *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, Case No. 18–13874, 2019 WL 2498925, at *2 n. 4 (D.N.J. June 17, 2019).

Defendant appears focused on express preemption pursuant to Section 514 and, in any case and in the interest of completeness, complete preemption does not apply to plaintiff and this case. ERISA complete preemption only applies "if: (1) the plaintiff could have brought the claim under §502(a); *and* (2) no other

---

[6] Defendant correctly notes that plaintiff's opposition does not respond to its arguments as to Counts 5 through 7 that any alleged assignment did not confer any rights beyond benefits and also that the claims fail as a matter of law. (Def.'s Reply Br. p. 7 n. 2.) I agree that plaintiff's decision not to address defendant's arguments despite an opportunity to do so constitutes a waiver or abandonment as to those arguments. *See EBIN N.Y., Inc. v. KISS Nail Prods., Inc.*, Case No. 23–02369, 2024 WL 1328029, at *7 (D.N.J. Mar. 28, 2024) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." (quoting *Lawlor v. ESPN Scouts, LLC*, Case No. 10–05886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011))).

11

independent legal duty supports the plaintiff's claim." *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 410 n.11 (3d Cir. 2021) (quoting *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014)). At minimum, the first prong is not satisfied here because Section 502 limits civil actions to recover benefits to participants and beneficiaries. *See* 29 U.S.C. §1132(a)(1); *see also Plastic Surgery Ctr.*, 967 F.3d at 236 (noting that "[a]bsent the assignment of benefits, a healthcare provider may not pursue its own section 502(a) cause of action …."). I have found above that there has not been a valid assignment of benefits. Furthermore, plaintiff's state-law claims pertain to an alleged oral agreement or promise, representing an independent legal duty supporting the claims. *See Samra Plastic & Reconstructive Surgery v. Cigna Health and Life Ins. Co.*, Case No. 23–21810, 2024 WL 3568844, at *4 (D.N.J. July 29, 2024).

Section 514 "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). "State law" for the purposes of Section 514 broadly refers to "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *Id.* §1144(c)(1). "For Section 514(a) preemption to apply, a state law 'relates to' an employee benefit plan if the law has: (1) a 'reference to' the plan; or (2) a 'connection with' the plan." *Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 491 (D.N.J. 2023) (quoting *Shaw*, 463 U.S. at 97). Courts within this District have been somewhat divided in whether Section 514 preempts out-of-network providers from asserting state-law claims against insurers. *See id.* at 492 (collecting cases). Based on the allegations in the complaint and stage of proceedings, I decline to find that plaintiff's claims are preempted under Section 514.

*Plastic Surgery Center* controls this decision. There, two patients were provided services by an out-of-network provider that contracted with the

insurer for "a reasonable amount for those services according to the terms of the Plan" in one instance and the "highest in[-]network level" in the other. *Plastic Surgery Ctr.*, 967 F.3d at 223–24 (alteration in original). After the services were rendered, the insurer paid less than allegedly promised for some services and declined to pay for other allegedly agreed-upon services altogether. *Id.* at 224.

The Third Circuit noted that claims that impermissibly reference ERISA plans include not only claims that "act[] immediately and exclusively upon ERISA plans," but also those that are premised on the plans. *Id.* at 230 (alteration in original) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016)). The latter category further includes 1) claims predicated on the plan or its administration or for which the plan is critical in establishing liability and 2) claims involving construction of the plan or requiring an interpretation of its terms. *Id.* The court concluded that the provider's breach of contract and promissory estoppel claims, as pleaded, arose out of the insurer's oral offers or promises, not the terms of the plans. *Id.* at 231–33. Likewise, the court concluded that no more than a cursory review of the patients' plans would be necessary to determine a reasonable amount or highest in-network level for the services provided. *Id.* at 233–34.

Lastly, the Third Circuit found that the provider's breach of contract and promissory estoppel claims did not have a connection with the plan. *Id.* at 235–39. This was because the claims arose out of a relationship—third-party providers and plan administrators—that ERISA did not intend to govern, the claims as pleaded did not interfere with the plans' administration, and preemption would undercut ERISA's purpose of protecting participants and beneficiaries by leaving providers to sue patients as their only recourse for payment. *Id.*

13

Defendant seeks to distinguish *Plastic Surgery Center*. (Def.'s Reply Br. pp.9–11.) A transcript of the preauthorization call—which I will address below— could not have led plaintiff to believe that an agreement independent of the plan was reached and no agreement or promise independent of the plan is alleged, according to defendant. (*Id.* pp.9, 10.) Further, unlike here, the plans in *Plastic Surgery Center* did not cover out-of-network providers and so the provider's only means to ensure payment was to reach an agreement with the insurer. (*Id.* pp.10, 11.) Post-*Plastic Surgery Center* decisions within this District lead me to reject defendant's arguments.

For instance, in *Premier Orthopaedic Associates of Southern NJ, LLC*, the out-of-network provider allegedly relied upon a letter confirming medical necessity in performing surgery. 675 F. Supp. 3d at 489–90. The court concluded that preemption was inappropriate because the provider sought to enforce an obligation that arose from preapproval of the surgery and the allegedly normal and reasonable rate for the surgery could be determined via a cursory review of the plan or fee schedule. *Id.* at 493.

Similarly, in *Gotham City Orthopedics, LLC v. United Healthcare Insurance Co.*, the out-of-network provider contacted the insurer for preapprovals and was generally paid less than what was billed. Case No. 21–11313, 2022 WL 111061, at *1 (D.N.J. Jan. 12, 2022). The insurer endeavored to distinguish *Plastic Surgery Center* based on the provider's argument that the claims ought to have been covered by the plans, *id.* at *4, similar to defendant's argument here that there was out-of-network coverage available. The court rejected this argument, finding that the provider "covered its bases" by obtaining preapprovals and the preapprovals allegedly gave rise to independent duties to pay apart from the plans. *Id.*

Two recent decisions involving plaintiff are most directly on point. In both instances, as here, the insurers were contacted for approval of CPT codes.

14

*Samra Plastic & Reconstructive Surgery*, 2024 WL 3568844, at *1; *Samra Plastic and Reconstructive Surgery*, 2024 WL 3444273, at *1. The insurer also, like here, sought to distinguish *Plastic Surgery Center* by asserting that the plans provided out-of-network coverage. *Samra Plastic & Reconstructive Surgery*, 2024 WL 3568844, at *5; *Samra Plastic and Reconstructive Surgery*, 2024 WL 3444273, at *4. Neither case applied preemption because the claims were based on contractual or quasi-contractual duties independent of the plans and it was unclear in both complaints whether anything more than a cursory review of plans would be necessary. *Samra Plastic & Reconstructive Surgery*, 2024 WL 3568844, at *5–6; *Samra Plastic and Reconstructive Surgery*, 2024 WL 3444273, at *4–5.

I find that the same result is warranted here. For Counts 1 through 3, "whatever … liability may exist in this case arises from the pre-approval discussion" between plaintiff and defendant, not EP's plan. *See Gotham City Orthopedics, LLC*, 2022 WL 111061, at *4.

This conclusion does not mean that plaintiff is out of the woods. The complaint asserts three state-law causes of action: breach of contract, promissory estoppel, and account stated. (Compl. pp.6–8.) A breach of contract claim requires that the parties entered into a contract containing certain terms, the plaintiff performed as required while the defendant did not, and the defendant's breach caused a loss for the plaintiff. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021). A promissory estoppel claim consists of "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Id.* (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). Finally, an account stated claim requires a showing that "the defendant implied a promise to pay based on an

admission of indebtedness to the plaintiff." *Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 536 (D.N.J. 2019).

Each of these causes of action refers to defendant's alleged agreement or promise to pay 50 percent of the billed charges. (Compl. pp. 6, 7.) More generally, plaintiff seems to allege that the agreement or promise to pay that portion occurred during the preauthorization call or that issuance of the preauthorization was somehow synonymous with an agreement to pay 50 percent. (*Id.* pp. 4, 5.) These allegations are contradicted, according to defendant, by the transcript of the preauthorization call. (Def.'s Mot. Br. p. 23.)

As stated above, a court generally may not consider material extraneous to the pleading at the dismissal stage. *Red Hawk Fire & Sec., LLC*, 449 F. Supp. 3d at 459. Here, I conclude that I may consider the transcript even though it is included with defendant's moving brief rather than the complaint because it is "*integral to or explicitly relied upon* in the complaint." *Princeton Neurological Surgery, P.C. v. Aetna, Inc.*, Case No. 22–01414, 2023 WL 2307425, at *4 (D.N.J. Feb. 28, 2023) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)). Plaintiff notably does not challenge the authenticity of the transcript or its contents.

According to the transcript, an individual named "Jay" called from plaintiff's office and spoke with a representative of defendant named "Anne C." (ECF No. 9–4.) Jay verified plaintiff and EP's names and inquired about pending authorizations. (*Id.* p. 1.) Anne C. confirmed authorizations for seven CPT codes, the lack of authorization for an eighth code, and that authorization included Dr. Samra. (*Id.* pp. 1, 2.) After receiving these preauthorizations, Jay requested Anne C.'s name and a reference number and the call concluded. (*Id.* pp. 2, 3.) The transcript contains no reference—let

16

alone an agreement or promise—pertaining to any amount or percentage that was to be paid.

Perhaps sensing the jaws of defeat, plaintiff asserts in its opposition that "a contract has been created through Defendant's course of conduct and interaction with Plaintiff," argues that defendant promised to pay 50 percent of billed charges "by providing pre-surgery authorization," and highlights "the promise to pay inherent in said authorizations." (Pl.'s Opp'n Br. pp.14–16.) Plaintiff also states that its assertion that defendant offered to pay 50 percent of billed charges is consistent with the terms of the plan. (*Id.* p.14 n.3.) Insofar as these arguments supplement the pleadings—and I find that at the very least the reference to the plan's terms does—"it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

To the extent the arguments merely piggy-back off the complaint's allegation that a contract was formed through defendant's "course of conduct and interaction with" plaintiff (Compl. p.6), they—like the allegations in the complaint—are devoid of any detail necessary to conclude that defendant's preauthorization itself constituted an agreement or promise to pay 50 percent not referenced during the call. No past agreements or arrangements are cited to support plaintiff's assertion that defendant agreed to pay 50 percent of billed charges as part of the preauthorization or through a course of conduct or interaction with plaintiff. In fact, plaintiff's status as an out-of-network provider suggests no prior relationship with defendant. *See Premier Orthopaedic Assocs. of S. NJ, LLC*, 675 F. Supp. 3d at 494–96. Without an explicit agreement or promise during the call, which plaintiff unhelpfully declined to address in its opposition, the agreement, promise, and/or debt on

17

which plaintiff's state-law claims rely are dependent on the preauthorization itself. That preauthorization lacks any necessary context. Accordingly, these claims will be dismissed. *See id.*; *E. Coast Spine Joint v. Anthem Blue Cross Blue Shield*, Case No. 22–04841, 2023 WL 3559704, at *5–6 (D.N.J. Apr. 27, 2023).

As above, dismissal will be without prejudice. Plaintiff will be provided 30 days to file an amended complaint consistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (ECF No. 9) will be GRANTED. An appropriate order accompanies this opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: February 10, 2025